UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 22-cr-00048-TDC |
| | : | |
| KEIONTA HAGENS | : | |
| Defendant. | : | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The defendant, by and through counsel, respectfully submits this memorandum in aid of sentencing. He requests that he be sentenced as outlined below.

### PROCEDURAL BACKGROUND

1. On June 20, 2024, the defendant was named in a nine-count Second Superseding Criminal Indictment charging him with Count 1 - Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); Counts 2 and 6 - Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); Count 3 - Use, Carry, and Brandish a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Count 7 - Murder Resulting from the Use, Carrying, Brandishing, and Discharging of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(j). The offenses occurred from on or about November

1

12, 2020, through at least on or about January 18, 2021, in the District of Maryland.

2. On October 25, 2024, the jury returned a verdict as to Counts 1, 2, 3, and 6 of the Second Superseding Indictment. Hagens was found not guilty of Count 7.

3. The Presentence Report (PSR) found a base offense level of 30 and a criminal history category VI (13 points), with a resulting guideline range of 168 to 210 months. The PSR recommends a sentence of 189 months.

4. Defendant will ask for a criminal history category reduction to category V, due to the minor nature of several of his prior convictions. If adopted by the Court, the defendant's range for a base offense level 30, criminal history category V, would be 151 to 188 months. The defendant will argue for the low end of his guideline range.

5. Defendant also argues that his guideline range as calculated by the PSR is incorrect. He argues that he should be at a base offense level of 29 for the reasons stated below.

## MATERIAL ERRORS IN PSR

6. Mr. Hagens submits that the conspiracy count encompassed more than one object. However, the jury did not make a unanimous finding as to which object(s) the Defendant was guilty. Certainly, the lack of a unanimous finding as to the object(s), does not change the fact that the Defendant was convicted of the

Count One Conspiracy. But this lack of unanimity as to objects of the conspiracy clearly affects sentencing:

> Significantly, the jury's general verdict does not indicate whether the jury unanimously agreed to convict the defendant on all, or fewer than all, of the three objects of the conspiracy, and if the latter, which of the three objects it found. This is no minor matter, as in this case, the conspiracy count drives the calculations under the Sentencing Guidelines, which provide that, in general, a person convicted of a multiple object conspiracy "shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." U.S.S.G. § 1B1.2(d).
>
> * * * *
>
> Put another way, a post-verdict Rule 29 attack on a conspiracy conviction must encompass all the conspiracy objects submitted to the jury; an attack on fewer than all the objects could affect only sentencing, not the fact of conviction. And the proper procedure to follow in this event is found in the Guidelines, not Rule 29. See U.S.S.G. § 1B1.2(d) application note 5. Here, a defendant, for sentencing purposes, attacks fewer than all of the objects of a convicted conspiracy on grounds of insufficient evidence for purposes of sentencing, the Guidelines, not Rule 29, is the proper procedural weapon.

*United States v. Parris*, 88 F.Supp.2d 555, 560-561 (E.D. Va 2000).

7. Applying the guidance provided by *Parris*, the Defendant's sentencing base offense level would be reduced by 1 point. This is due to the fact that eliminating accountability for the November 12 events (7-11 robbery & carjacking) reduces the Multiple Count Adjustment to 2 units, resulting in a base offense level increase of 2 rather than 3. The final base offense level would

become a level 29, rather than 30. PSR at page 9, ¶ 44. This results in a guideline range of 151 to 188.

## CRIMINAL HISTORY OVERREPRESENTED

8. The PSR documents a total of 7 points for minor offenses inclusive of a BRA, simple possession, and alcohol-related traffic offenses. PSR at ¶ 61, 63, 70, 72, and 74. These offenses demonstrate a need for treatment/assistance as opposed to a prediction of future "criminal" activity. Mr. Hagens moves the court to depart by one criminal history category to a level V. See USSG §§ 4A1.3 (b)(1) and 4A1.3 (c) (2). An adjustment for overrepresentation would result in a base offense level of 29, criminal history category V, for a final guideline range of 140 to 175.

## SENTENCING FACTORS

9. The core requirement of 18 U.S.C. §3553(a) is that the court impose *"a sentence sufficient, but not greater than necessary"* to comply with the purposes of sentencing set forth in § 3553(a), which provides no order of priority among the factors. The factors outlined in § 3553(a) are as follows:

• The nature and circumstances of the of the offense and the history and characteristics of the defendant 18 U.S.C. § 3553(a)(1);

• the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A);

• the need for the sentence imposed "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B);

• the need for the sentence imposed "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2) (C);

• the need for the sentence imposed "to *provide the defendant with needed educational or vocational training, medical care*, or other correctional treatment in the most effective manner," 18 U.S.C. § 3552(a)(2)(D);

• the kinds of available sentences available, 18 U.S.C. § 3553(a)(3);

• the guidelines in effect at the date of sentencing and any pertinent policy statements, 18 U.S.C. § 3553(a)(4) and (5);

• the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6);

• the need to provide restitution to any victims of the offenses, 18 U.S.C. § 3553(a)(7).

## PERSONAL BACKGROUND

10. Keionta Hagens is a troubled man. He struggles with mental health and drug abuse issues. PSR at pages 25-27, ¶¶ 115 to 124. The PSR arrived at its recommendation of 189 months in large part due to Hagen's background. It concluded that "[H]is mental health history consists of numerous diagnoses which

5

include PTSD, schizophrenia, bipolar disorder, major depressive disorder, OCD, unspecified mood disorder, and psychotic disorder. He also displays a pattern of neurocognitive impairment." PSR at page 34. His drug and alcohol dependency is well documented. PSR at pages 27-27, ¶¶ 123 to 124.

11. Chaos has dominated Keionta Hagens' life from an early age. His father, who impregnated his sister, was never really a part of his life. His mother, the only stable figure in his life, died at the onset of what became a downward spiral for him. He struggled at school due to untreated issues related to his depression. Page 27 at ¶ 126. His drug and alcohol abuse can only be characterized as evidence of self-medication. His prior incarceration was spent almost entirely in isolation by his own choice. His mental health needs were obviously beyond the capabilities of the institutions where he was housed. Yet he has sought out mental health treatment while not incarcerated. PSR at page 25, ¶ 117.

## THE OFFENSE

12. The offense of conviction can only be characterized as a danger to the public. However, mitigating factors should impact the sentence imposed. Trial testimony established that the co-defendants moved into Mr. Hagens' house shortly after his mother passed. There was concern among the family members that the defendant "was not right" and to that end, needed oversight. Unfortunately, their arrival led to extensive drug use and involvement in the offenses of conviction.

6

Prior to the defendant's mother's death, and the arrival of his relatives, Hagens just struggled with alcohol and drug abuse issues.

## DETERRENCE & SAFTEY OF COMMUNITY

13. Hagens has never really had the long-term treatment he needs to be a functional person. His DC conviction led to incarceration in the Bureau of Prisons where he spent most of his time in a Special Housing Unit (SHU). Hagens spent years in isolation. Housed in Prince George's County Jail, he again spent most of his time in isolation.

## INCARCERATION

14. Mr. Hagens requests that he be referred to the RDAP program while he serves his sentence. Although he will not receive any time credits, it is needed to address his long-term substance abuse problems. Most important is his request to be housed a facility equipped to treat his mental health issues – a Federal Medical Facility (FMC). To continue incarcerating a person with his issues –in isolation – is cruel and does not further any legitimate purpose. Finally, he requests that he be referred to participate in some form of vocational training while incarcerated and while on supervised release. To his credit, he has his GED, but he has no vocational training.

## CONCLUSION

Mr. Hagens submits that a sentence at the low end of his guideline range is a "sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

_____/s/_____
Christopher M. Davis #385582
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this response was served on counsel for the United States via the court's CM/ECF system on this 29th day of January 2025.

_____/s/_____
Christopher M. Davis
